## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TILE OUTLET, INC., | § | Case No. 05-80340-G3-11 |
| and | § | |
| ALAN MILLER | § | Case No. 05-36681-H2-11 |
| | § | |
| Debtors | § | Jointly Administered under |
| | § | Case No. 05-80340-G3-11 |

### COMMITTEE'S MOTION FOR AUTHORITY TO BRING
### CAUSES OF ACTION ON BEHALF OF ESTATE

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

The Official Unsecured Creditors' Committee (the "Committee") of Tile Outlet, Inc. ("Tile Outlet" or "Debtor") hereby moves this Court for an order under 11 U.S.C. §105 authorizing it to bring certain estate causes of action (described herein), showing unto the court as follows:

### Summary

1.      Mr. Miller, one of Tile Outlet's two shareholders, transferred over $200,000 in corporate funds and obtained a personal loan (that encumbered Tile Outlet's assets) of $600,000 for the purpose of buying out the other shareholder, Mr. Tinsley. Tile Outlet collapsed shortly

after the transfers because the transfers rendered the Debtor insolvent.   The Debtor received no value for encumbering all of its assets and guaranteeing Mr. Miller's debt.   The Committee made demand on the Debtor to pursue the causes of action outlined herein.   The Debtor investigated the claim, but eventually refused to pursue it.[1]

2.      By this Motion, the Committee asks that the Court authorize it to sue Mr. Miller and Mr. Tinsley and for breach of fiduciary duty and Chapter 5 causes of action.   The Committee seeks authority to sue Bank One[2] for fraudulent transfer as the Debtor received no value for the pledge of all its assets to pay an insider.

### Factual Background

3.      Mr. Tinsley and Mr. Miller founded and operated Tile Outlet, a chain of flooring stores.   Mr. Tinsley ran the back office, while Mr. Miller was the congenial people-manager. Mr. Miller never finished high school.   Mr. Tinsley had a business degree.

4.      One day in June 2004, Mr. Miller asked Mr. Tinsley to buy him out.   Mr. Miller testified at the Section 341 meeting that he had never read a balance sheet or income statement, and would not know how.   Mr. Miller and Mr. Tinsley only discussed the buy-out price for a few minutes.

5.      The Debtor's balance sheet (prepared by Mr. Tinsley, of course) shows the Debtor was solvent on June of 2004.   In July of 2004, the Debtor's balance sheet (prepared by the accountant subsequently hired to perform Mr. Tinsley's job) shows the liabilities outstrip the Debtor's assets.[3]   The Debtor, to the extent not already insolvent and without working capital, became insolvent and unreasonably undercapitalized in July of 2004.

---

[1] The Debtor's letter of November 14, 2005 refusing to pursue the causes of action outlined herein is attached as Exhibit "A".

[2] now known as JPMorgan Chase.

[3] The financial statement footnotes the obligation as "contingent", but the obligation should be reflected on the books as a present liability because Corporate funds were the source of payment and because Mr. Miller had no independent means of paying the obligation. .

6.      Two principal actions destroyed the Debtor.  First, the insiders (one who knew better and the other who should have known better) decided on a "buy-out" price of $1,500,000 with no investigation as to a fair price based on any market analysis.  Second, to pay the outlandish purchase price, Mr. Miller diverted hundreds of thousands of dollars in cash on hand to Mr. Tinsley and encumbered all of the Debtor's assets to secure a loan by Bank One.

7.      The Debtor limped along for a short while until forced to file bankruptcy because it could not service the debts, specifically the payments to Bank One for Mr. Miller's benefit.  In the Chapter 11 proceeding, the Debtor sought and obtained Cash Collateral.  The Cash Collateral order purports to limit the ability of the Debtor (and, presumably, this Committee) to bring Chapter 5 causes of action against Bank One for causes of action, including Chapter 5 causes of action.  The Cash Collateral Order set a deadline by which a suit against Bank One must be commenced.

8.      The Committee commenced its adversary proceeding Bank One (05-8032) before the deadline, alleging that Bank One received its guaranty (and the resulting lien) as a fraudulent transfer because the Debtor received less than reasonably equivalent value for the guaranty of the insider's debts, and because the debt rendered the Debtor insolvent.

9.      By order entered October 19, 2005, this Court dismissed the adversary proceeding against Bank One, without prejudice to seeking authority *nunc pro tunc* to bring suit after making demand on the Debtor.  The Committee made demand on the Debtor to commence causes of action against Bank One and Messrs. Miller and Tinsley.  The Debtor refused by letter dated November 14, 2005.

## Relief Requested

10.     There are several causes of action the Committee seeks to pursue, or appoint a

Chapter 11 trustee to pursue:

a. Breach of fiduciary duty against Mr. Miller for taking the Debtor's money and paying it to a shareholder instead of to creditors, for making distributions while the Debtor was insolvent, and for other breaches of fiduciary duty;

b. Breach of fiduciary duty against Mr. Tinsley

c. Fraudulent transfer against Bank One for the guaranty and lien of the Debtor, which provided no reasonably equivalent value to the Debtor.

d. Fraudulent Transfer against Mr. Miller to the extent he received the Debtor's money and paid Mr. Tinsley with it, and the Debtor received no value for the payment.

e. Fraudulent Transfer against Mr. Tinsley as the initial or subsequent transferee of money from the Debtor, for no reasonably equivalent value.[4]

f. Preference avoidance against Mr. Tinsley to the extent he was paid on an antecedent debt within a year of bankruptcy.

## Breach of Fiduciary Duty Against Mr. Miller

11.    It is hornbook law that when a Debtor is insolvent, or about to be, that the fiduciary duties management owes to shareholders shift[5] to include duties to creditors. See, E.g., *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997) (Atlas, J.); *In re Jackson*, 141 B.R. 909, 916 (Bankr. N.D. Tex. 1992). As Judge Akard explained in *Jackson* (quoted by Judge Atlas in *Kellogg*), the creditors are owed fiduciary duties when a transaction prejudices them by rendering the company insolvent or acts as a fraudulent transfer:

The imposition of a fiduciary obligation on a dominant or controlling stockholder or stockholders is not just for the protection of the corporation or its other stockholders, but extends to corporate creditors as well. *Pepper v. Litton*, 308 U.S. 295, 84 L. Ed. 281, 60 S. Ct. 238 (1939). However, "the rights of creditors are involved only where there has been prejudice to the creditors, and prejudice arises only where the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Martin v. Kagan (In re Tufts Electronics, Inc.)*, 746 F.2d 915, 917 (1st Cir. 1984).

---

[4] The Debtor has been asked to bring this cause of action and has not, though it remains willing to do so.
[5] Some authorities say the duty "expands".

*Jackson* at 915.

12.     It is also black-letter law that a Texas Corporation may not make distributions to shareholders while insolvent, or if those distributions would render the Corporation insolvent:

> Under the TBCA, a "distribution may not be made if (1) after giving effect to the distribution, the corporation would be insolvent; or (2) the distribution exceeds the surplus of the corporation. TEX. BUS. CORP. ACT ANN. art. 2.38B (Vernon Supp. 2004).

*Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 515 (5th Cir. 2004)

13.     During this case, Mr. Miller has refused to pursue causes of action against himself or against Bank One. However, since he was a fiduciary engaged in self-interested transactions, he must prove to the court that his transaction was fair - the Committee does not bear the burden. *International Bankers Life Ins Co. v. Holloway*, 368 S.W.2d 567, 576-77 (Tex. 1963); *In re Jackson*, supra at 916 (Bankr. N.D. Tex. 1992); *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.--Austin 1988, no writ).

14.     The Committee contends that the actions of Mr. Miller and Mr. Tinsley were made while the Debtor was in the "Zone of Insolvency" - or they rendered the Debtor insolvent. The Committee believes that it has standing, independent of this motion, to sue these individuals for breaching fiduciary duties to the Debtor's creditors.

15.     Unsurprisingly, Mr. Miller has expressed no interest in suing himself for breach of duty. Thus. to the extent that the Committee is required to obtain authority to sue Mr. Miller for the benefit of the estate under Chapter 5 causes of action and fiduciary theories, it seeks that authority here.

### Breach of Duty Against Mr. Tinsley

16.     The Committee seeks court authority to pursue Mr. Tinsley on behalf of the Debtor's estate. Mr. Tinsley held a position of special trust with the Debtor. He cashed out his

interest at a convenient time - six months before the company folded.  For 21 years, he and Mr. Miller had been business partners.  They parted ways at the same time company funds departed the Debtor's account and entered Mr. Tinsley's.  Mr. Tinsley will certainly be sued by the Debtor, Mr. Miller, or the Committee.  The Committee simply seeks to have the disputes resolved in one suit.  The Debtor has withheld suing Mr. Tinsley because it hopes to do so in the context of a plan of reorganization.

17.     However, as the issues relating to Mr. Tinsley and Bank One and Mr. Miller need to be resolved in one proceeding, judicial economy and the interests of justice support giving the Committee authority to sue Mr. Tinsley to the extent such permission is required.

### Fraudulent Transfer Against Bank One

18.     Since Mr. Miller is personally liable for the Bank One debt, it is in his financial interest to have the Debtor pay Bank One, even if the Debtor does not actually owe the money.

19.     In response to the Committee's demand that the Debtor pursue these causes of action, the Debtor's counsel indicated that the loan benefited the Debtor -- even though the Debtor was forced into bankruptcy months later.

20.     Moreover, in the Cash Collateral Motion (docket #4), the Debtor indicates that the promissory note to Bank One was made by the Debtor - not Mr. Tinsley.  Mr. Miller's declaration (Docket #3) affirmed the truth and accuracy of the statement in the Cash Collateral Order.  The Debtor's incorrect representation of the obligation as a promissory note of the Debtor was not remedied until, arguably, it filed a Disclosure Statement filed June 6, 2005.

21.     The Debtor has likewise denied that the $600,000 guaranty was an obligation that rendered the Debtor insolvent in July of 2004 -- because it was "contingent".  This denial comes in the face of 1) the bankruptcy months later, and 2) the Disclosure Statement:

Also in July of 2004, the Debtor became indebted to Bank One under the Commercial Guaranty which secured the underlying $600,000 loan used to purchase Mr. Tinsley's fifty percent (50%) ownership in Tile outlet discussed above in Section VI.

Disclosure Statement at p. 13.

22.     The guaranty was not contingent because Mr. Miller could never pay the $10,000 per month required to service the note.  Mr. Miller lacked the means to collateralize the note, as shown by minutes of the loan committee of Bank One.

23.     The Committee contends that the Debtor did not receive reasonably equivalent value for the Debtor's guaranty of Mr. Miller's loan to pay Mr. Tinsley.

### Authorization to Sue Bank One Should be Granted Nunc Pro Tunc

24.     This Court dismissed the adversary proceeding against Bank One without prejudice, with the ability to seek *nunc pro tunc* authorization to sue on behalf of the estate.  As part of the Cash Collateral order, the Court set a deadline for bringing suit against Bank One to challenge its claim.  The Committee instituted suit before the deadline, believing that the Cash Collateral Order granted it authority.  By its order, the Court informed the Committee of the need to first make demand upon the debtor.  The Committee made demand, and the Debtor refused, in writing, less than one month ago.

25.     Under Fifth Circuit Law cited by this Court in its October 19, 2005 ruling, the Court may authorize the Committee to assert Chapter 5 causes of action after demand has been made and the Debtor has responded to that demand:

In *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233 (5th Cir. 1988), the Fifth Circuit held that a Committee may pursue a cause of action owned by the bankruptcy estate if a colorable claim exists, the debtor in possession unjustifiably refuses to pursue the claim, and the Committee seeks and obtains leave from the bankruptcy court to pursue the claim.

October 19, 2005 Order at p. 6.

26.     The facts here certainly establish a "colorable" claim.  The Debtor's assets were encumbered by a guaranty for the benefit of an insider, not the debtor.  The financial statements indicate that the guaranty was footnoted.  The insider loan was paid directly by the Debtor and the maker had no means to satisfy it.  When the guaranty is placed on the books as a liability, then the Debtor was rendered insolvent by the guaranty.  That is a colorable claim for a constructively fraudulent transfer.  The other facts stated herein set forth colorable bases for the causes of action the Committee seeks to pursue.

27.     The Debtor has refused to pursue these claims and tendered its explanation for this refusal (Exhibit "A").  However, the Debtor's explanation that the $600,000 loan (and $200,000 in cash) "benefited" the Debtor is beyond cavil.  The Debtor did not have to pay its former financial brains, but it did have to hire a bookkeeper on a contract basis, and the lack of a financial manager plunged the Debtor into bankruptcy months later.  Clearly, the Debtor has no justification for refusing to contest the Bank One claim.

28.     *Nunc pro tunc* authorization should be permitted because the purpose of the deadline set in the Cash Collateral Order was to establish a time by which the Bank would know it was being sued.  The Bank knows that someone challenges the Debtor's guaranty, and why.

29.     There is ample case law to support the position that the Court may grant the Committee authority *nunc pro tunc* under these circumstances.  See, E.g., *Grand Eagle,* supra. *Official Comm. of Unsecured Creditors of America's Hobby Center, Inc. v. Hudson United Bank (In re America's Hobby Center, Inc.),* 223 B.R. 275 (Bankr. S.D. N.Y. 1998); *In re Catwil Corp.,* 175 B.R. 362 (Bankr. E.D. Cal. 1994); *Liberty Mutual Ins. Co. v. Official Unsecured Creditors' Committee of Spaulding Composites Co. (In re Spaulding Composites Co.),* 207 B.R. 899 (9th Cir. BAP 1996).

30.     The cases of *Grand Eagle* and *America's Hobby Center* have a particularly notable similarity with this case.  In both, the Debtor made waivers and concessions to the secured lender because it was pressed for cash collateral and the cash collateral order gave the Committee a deadline to pursue the action. Such situations are common:

> Having little leverage and a pressing need for cash with which to operate, chapter 11 debtors not fortunate or well-heeled enough to have acquired postpetition financing typically ratify their prepetition lending agreements and waive the right to challenge the lender's security interest in return for the lender's agreement to the debtor's use of the lender's cash collateral. Through this vehicle, those debtors obviate expensive and potentially unsuccessful court battles for authority to use their own cash. Almost always, these cash collateral stipulations (albeit sometimes only through the intercession of the judge) reserve to the creditors' committee, acting on behalf of the estate, the ability to challenge the perfection, enforceability, or priority of the liens. And frequently, if the creditors' committee wishes for its counsel to be paid for its efforts out of the lender's collateral, that right to sue is circumscribed by an outside date.

*Grand Eagle* 310 B.R. 83 at n.1 quoting *America's Hobby Center,* 223 B.R. 275 at 278.

31.     The Court in both cases granted *nunc pro tunc* authorization, to the extent required, because time was short, the cash collateral order indicated the Committee will file suit, and otherwise the claim would go unscrutinized:

> Similarly, I find that retroactive approval, to the extent necessary, is appropriate in this case. . . .Thus, as in *American Hobby,* if the Committee cannot bring the avoidance action against the Pre-Petition Lenders, the transaction of the Debtors and the Pre-Petition Lenders likely will go unscrutinized. In addition, no party to the Adversary Proceeding can claim any confusion as to who would bring the Adversary Proceeding given the agreement of the Trustee and Committee memorialized in the March 27, 2002 Stipulation. Finally, time was of the essence. As a result of the fast pace of the Debtors' chapter 11 cases in the initial months after filing, the February 28, 2002 deadline for filing an avoidance action against the Pre-Petition Lenders was short. Had the Committee not filed its Complaint on or before that date it would have lost the ability to pursue such a challenge. For all of these reasons, I find that the Committee should be granted standing, *nunc pro tunc,* to pursue the avoidance action against the Pre-Petition Lenders.

*Grand Eagle,* 310 B.R. at 63-64.

32.     Here, the factors weigh in favor of *nunc pro tunc* authorization.  Without the suit, the Bank's secured claims for over $800,000 will go unscrutinized and unchallenged. The Cash Collateral Order made clear that an adversary proceeding could be filed.  One was.  The Court dismissed the suit without prejudice to seeking *nunc pro tunc* authority, which is sought here.

### Alternative/Additional Fraudulent Transfer Suits

33.     The Court may avoid the Debtor's guaranty of Mr. Miller's personal loan. Avoidance of the guaranty will benefit to the estate, but will not amount to a full recovery.

34.     Mr. Miller and/or Mr. Tinsley received substantial amounts of money (pursuant to the buy-out agreement) directly or indirectly from the Debtor.

35.     To the extent that the guaranty to Bank One is not avoided, and/or to the extent of transfers of the Debtor's assets to Miller and Tinsley under the buy-out agreement, the Committee seeks authority to bring fraudulent transfer suits against Tinsley and Miller.

### Preference Suit Against Tinsley

36.     To the extent that a valid debt existed to Tinsley, payments to him should be recoverable as a fraudulent transfer.  To the extent value was given, Mr. Tinsley's debt was still unsecured[6] and the Court should authorize the Committee to pursue preference avoidance actions against him under 11 U.S.C. §547.

---

[6] Because Bank One's guaranty was apparently secured by a lien, there appears to be no preference claim against Bank One.

**WHEREFORE,** the Committee prays that the Court Authorize the Committee to pursue the causes of action outlined herein for the benefit of the estate, and grant such other and further relief as is just and proper.

Dated:  December 9, 2005.

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____
    EDWARD L. ROTHBERG
    State Bar No. 17313990
    Fed. I.D. No. 2780
    HUGH M. RAY, III
    State Bar No. 24004246
    Fed. I.D. No. 22090
    Eleven Greenway Plaza, Suite 1400
    Houston, Texas 77046
    Telephone: (713) 961-9045
    Facsimile:  (713) 961-5341

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF THE UNSECURED
CREDITORS

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2005 a true and correct copy of the above and foregoing has been forwarded to the parties on the attached service list by U.S. Mail, First Class, postage prepaid.

_____
Hugh M. Ray, III

**Debtor**
Tile Outlet, Inc.
13707 State Hwy. 249
Suite 294
Houston, Texas 77086

**U.S. Trustee**
Ellen Hickman
Office of the United States Trustee
515 Rusk Avenue, Ste. 3516
Houston, Texas 77002

**Offiical Committee of Unsecured Creditors:**
QEP Inc.
Attn: Marc Applebaum
1081 Holland Drive
Boca Raton, FL 33487

Readers Wholesale Distributors, Inc.
Attn: James Constable
1201 Naylor Street
Houston, Texas 77002

Master Tile
Attn: Catherin Margiorta
12614 Hempstead Hwy.
Houston, Texas 77092

Bank One/Chase
c/o Michael Durrschmidt
Hirsch & Westheimer, PC
700 Louisiana; Suite 700
Houston, TX 77002

Ford Motor Credit
P.O. Box 650575
Dallas, TX 75265-0575

Alief ISD Tax Office
P.O. Box 368
Alief, TX 77411

City of Jacinto City
10301 Market Street Rd
Jacinto City, TX 77029

Houston Independent School
District
P.O. Box 4668
Houston, TX 77210-4668

INTERNAL REVENUE
SERVICE
Department of Treasury
Memphis, TN 37501-0039

J.R. Moore Jr Tax Assessor
400 N. San Jacinto
Conroe, TX 77301-2823

Pasadena ISD
P.O. Box 1318
Pasadena, TX 77501-1318

Paul Bettencourt, Tax Collector
P.O. Box 4622
Houston, TX 77210-4622

Southern Montgomery Co.
MUDD
25212 Interstate 45
Spring, TX 77386-1432

Spring Branch I.S.D.
P.O. Box 19037
Houston, TX 77224-9037

State Comptroller
1919 North Loop West
Suite 510
Houston, TX 77008

**Top Twenty Unsecured Creditors:**
Ceramica Gomez

Ctra. Ribesalbes, Km -P.O. Box
8015
12006 Castellon (SPAIN)

Savoia
Via Ghiarola nuova
77-41042 Fiorano (MO) Italia

Amerisure Companies
P.O. Box 730502
Dallas, Texas 75373

Unicom Starker
 Euro 260.000 I.v. Via
Flumendosa
7-41040 Spezzano di Fiorano
Modenese (Mo)-Italy

Master Tile
P.O. Box 973513
Dallas, TX 75397-3513

Readers Wholesale Distributors
P.O. Box 2407
Houston, TX 77252-2407

Swiff-Train Company
Jim Shultz, Credit Manager
P.O. Box 9095
Corpus Christi, TX 78469

Azulejera Alcorense
Partida Ramonet, s/n., Apdo.
12550 Almazora ( Castellon-
Espana)

Ceramica Alfagres
Rod Wilson Finardi-SP 191
13537-000-Km 82- Ipeuna/ SP -
Brasil

Villagres
Chacara Vigorelli Cx Postal 39
Santa Gertrudes- Sp/Brasil-Cep

13510-000

Hispania Ceramica
Camino Viejo Castellon-Onda s/n,
Apdo
P O Box 170
12200 Onda (Castellon) Spain

Interceramic,Inc.
Attn: Remittance Processing
P.O. Box 201433
Dallas, Tx 75320-1433

Gomez Gomez
c/o RMRC Holding Company Inc.
Real Mercantil Trading Do Brasil
Inc.
Westbridge Office Plaza
1025 SW Martin Downs Blvd.
Suite 202C
Palm City, Florida 34990

Porto Ferreira
Av. 24 De Outubro
Porto Ferreira, SP
13660-970 Brasil

Azulindus & Marti
Avada. Manuel Escobedo, 25
Apto. Correos 22
12200 Onda (Castellon) Espana

Sintesi
Gruppo Ceramiche Gresmalt
S.p.A
Via Moisca, 38
41049 Sassvolo (MO), Italy

Roca
Avd.P.Catalans, 27
Sta. Margarida I Els Monjos
08730 Barcelona- Espana

Belfloor
Industrieweg 122 T,
9032 Wondelgem

Belguim

Gold Art Ceramica
Via Giardini Nord 231/233
41026 Pavullo (Mo), Italy


Real Mercantil DoBrasil, Inc.
P.O. Box 292
2047 SW Mayflower Dr.
Palm City, Florida 34991

Mr. Mark Cromley
Agent & Legal Representative
Gomez Gomez/Spain
Westbridge Office Plaza
1025 SW Martin Downs Blvd. 202C
Palm City, Florida 34991

**Parties Requesting Notice:**
Mitchell D. Savrick
Savrick Schumann Johnson McGarr
  Kaminski & Shirley
4330 S. Mopac, Suite 150
Austin, Texas 78735
*Attorneys for S.W. Oaks Holdings,Ltd.*

Owen M. Sonik
Perdue, Brandon, Fielder, Collins & Mott,
L.L.P.
1235 North Loop West, Suite 600
Houston, Texas 77008
*Attorney for Spring Branch Independent
School District*

John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
P. O. Box 3064
Houston, Texas 77253-3064
*Attorney for Cypress-Fairbanks ISD, City of
Houston, Montgomery County, Harris
County and Houston ISD*

Gretchen McCord
Nathan Sommers
Jacobs + Gorman,

A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
*Attorney for AK Hunting Bayou, L.C.*

Mark Browning
Assistant Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, Texas 78711-2548
*Attorney for Comptroller of Public Accounts
of the State of Texas*

F.P. Cribbs, Jr.
Willson, Cribbs & Goren, P.C.
2500 Fannin Street
Houston, Texas 77002
*Attorney for Marek-Sondock, Ltd.*

Edward L. Rothberg
Hugh M. Ray III
Weycer, Kaplan, Pulaski & Zuber, P.C.
11 E. Greenway Plaza,  Suite 1400
Houston, Texas 77046
*Attorney for The Official Committee of
Unsecured Creditors*

Mark Murrah
Stumpf Craddock Massey & Farrimond
1400 Post Oak Boulevard, Suite 400
Houston, Texas 77056
*Attorney for Jim R. Smith*

R. Christopher Naylor
Beatrice Grevel
Devlin, Naylor & Turbyfill, P.L.L.C.
4801 Woodway, Suite 420 West
Houston, Texas 77056-1805
*Attorneys for Ford Motor Credit Company*

Dexter D. Joyner
4008 Vista, Suite 203-C

Pasadena, Texas 77504
*Attorney for the Pasadena Independent*
*School District*

Gilbert B. Weisman
American Express Travel Related Svcs. Co.
Inc. Corp. Card
c/o Becket and Lee, LLP
P.O. Box 3001
Malvern, PA 19355-0701