

EXHIBIT A

## HughesWattersAskanase

RECEIVED NOV 17 2005 BY:

STEVEN D. SHURN
ASSOCIATE

sshurn@hwa.com
Direct Dial: 713-328-2824

November 14, 2005

*Via First Class Mail and Facsimile (713) 961-5341*
Hugh M. Ray, III, Esq.
Weycer, Kaplan, Pulaski & Zuber, P.C.
1400 Summit Tower
Eleven Greenway Plaza

   Re: Case No. 05-80340; Tile Outlet, Inc. ("Tile Outlet" or "Debtor"), In the Southern District of Texas, Galveston Division

Dear Hugh:

In your November 2, 2005 correspondence, the Official Committee of Unsecured Creditors of Tile Outlet, Inc. (the "Committee") demands that Tile Outlet file suit against:[1]

1. Bank One, N.A. to avoid Tile Outlet's guaranty of Alan Miller's loan with Bank One because such secured guaranty was purportedly a fraudulent transfer;

2. Mr. Miller for purportedly breaching his fiduciary duties because he caused the Debtor to guaranty the Bank One loan on a secured basis; and

3. David Tinsley for breaching his fiduciary duty.

**Pertinent facts.**

As you know, Mr. Tinsley was the president and a director of the Debtor. Mr. Tinsley asked Mr. Miller if Mr. Miller would purchase his interest in Tile Outlet. Mr. Miller agreed. As part of the purchase, Mr. Miller borrowed $600,000 from Bank One, which was paid to Mr. Tinsley.

Tile Outlet guarantied the $600,000 loan, and pledged its assets to secure such obligation.

---

[1] At the outset, it is important to note that the Debtor believes that the majority of the allegations asserted in the November 2, 2005 demand letter are untrue.

Hughes Watters Askanase LLP, Attorneys at Law
333 Clay, 29th Floor :: Houston, TX 77002-4168
PHONE 713 759 0818 :: FAX 713 759 6834 :: INTERNET www.hwa.com

SCANNED



Hugh M. Ray, III, Esq.
November 14, 2005
Page 2 of 4

At the time of the buyout, Mr. Miller, on behalf of Tile Outlet, believed that the buyout would save Tile Outlet approximately $305,000 in annual savings. This belief is evidenced by the enclosed document entitled "Tile Outlet Purchase Proposal"[2] which Tile Outlet provided to Bank One prior to Bank One making the $600,000 loan. This document evidences Mr. Miller's belief that Tile Outlet would benefit from the buyout because it would save the company $305,664 per year. These savings are compromised of the following:

| | |
|---|---|
| Salary | $240,000 |
| Insurance | |
|     Truck, Life and Health | $ 34,800 |
| Travel, Entertainment, Meals | $ 15,000 |
| Truck | $ 9,864 |
| Cell Phone | $ 3,000 |
| Donations | $ 3,000 |
| **Total Yearly Savings:** | **$305,664** |

This $305,664 *yearly* savings is significant when compared to Tile Outlet's $600,000 secured guaranty.

The stock sale between Mr. Tinsley and Mr. Miller occurred on June 15, 2004.

According to Tile Outlet's Balance Sheet[3], Tile Outlet was neither insolvent on June 15, 2004, nor rendered insolvent by its $600,000 contingent liability to Bank One pursuant to the secured guaranty.

It is important to note that, according to its Balance Sheet, Tile Outlet's total assets in June of 2004 were worth approximately $2,175,330, of which approximately $1,918,506 was attributable to inventory.

**No claim against Mr. Miller for breach of fiduciary duty exists.**

Tile Outlet does not believe that a claim for breach of fiduciary duty exists against Mr. Miller merely because Mr. Miller caused Tile Outlet to guaranty the Bank One loan on a secured basis. At the time the guaranty and security agreement were entered, Mr. Miller and Tile Outlet believed that because of the anticipated significant *yearly* savings of approximately $305,000 resulting from Mr. Miller's purchase of Mr. Tinsley's interest, that in Mr. Miller's business judgment it was beneficial for Tile Outlet to enter into the secured guaranty.

---

[2] Enclosed as Exhibit "A" is a true and correct copy of the Tile Outlet Purchase Proposal.

[3] Enclosed as Exhibit "B" is Tile Outlet's June, July and August 2004 Balance Sheet.



Hugh M. Ray, III, Esq.
November 14, 2005
Page 3 of 4

**No fraudulent transfer claim exists against Bank One.**

No fraudulent transfer claim exists against Bank One. An actual fraud claim does not exists because the secured guaranty was not transferred to Bank One with intent to hinder, delay or defraud. Additionally, a constructive fraudulent transfer claim against Bank One does not exist because:

1. Pursuant to the Indirect Benefit Rule, Tile Outlet received reasonably equivalent value in exchange for entering in to the contingent secured guaranty by receiving the anticipated $305,000 *yearly* savings resulting from Mr. Miller's purchase of Mr. Tinsley's interest in Tile Outlet.

2. As evidenced by Tile Outlet's enclosed Balance Sheet, Tile Outlet was neither insolvent, nor rendered insolvent, as a result of its secured guaranty.

3. As a result of the Secured Guaranty, Tile Outlet did not engage in a transaction for which its remaining property was unreasonable small capital. At the time it executed the $600,000 secured guaranty, Tile Outlet's assets were worth approximately $2,175,330, of which approximately $1,918,506 was attributable to inventory.

4. Tile Outlet did not intend to incur debts that were beyond its ability to pay as such debts matured. Not only was the guaranty a contingent debt, but the payments under the note are approximately only $10,000 per month.

**Potential claims against Mr. Tinsley.**

The Committee asserts that "Mr. Tinsley may be liable to the Debtor for breach of fiduciary duty" and that "a contribution claim by Mr. Miller may exist against Mr. Tinsley." As Tile Outlet and Mr. Miller have told the Committee before, Tile Outlet and Mr. Miller are willing to explore these issues with the Committee, and the possibility of transferring all such causes of action against Mr. Tinsley to the Committee through plan confirmation.

**Conclusion.**

For the reasons stated above, neither a fraudulent transfer claim against Bank One, nor a breach of fiduciary duty claim against Mr. Miller, exists. Because of this, it is improper for Tile Outlet to file suit against either.

Sincerely,

Steven Shurn

Enclosures



Hugh M. Ray, III, Esq.
November 14, 2005
Page 4 of 4

cc:	Michael Durrschmidt, Esq.	via email with enclosures
	Ken Thomas, Esq.	via email with enclosures
	Rick Ruchaber	via email with enclosures
	Alan Miller	via email with enclosures

# Tile Outlet Purchase Proposal

## Key Changes to Improve Sales and Reduce Expenses

### Company Savings from Buy-out of David Tinsley

|  | Annual |
|---|---|
| Salary | 240,000 |
| Insurance | |
|    Truck, Life, Health | 34,800 |
| Travel, Entertainment, Meals | 15,000 |
| Truck | 9864 |
| Cell Phone | 3000 |
| Donations | 3000 |
| **Total:** | **$305,664** |

### Advertising Expense – Annual

|  | Current | Proposed |
|---|---|---|
| SWB Yellow Pages | 45,600 | 12,000 |
| TV Ads, Austin | 180,000 | 96,000 |
| TV Ads, Houston | 275,000 | 180,000 |
| Total | $500,600 | $288,000 |

Reduction of Expense:    **$212,600** annually

### Bad Check Loss

Loss for 2003:   $76,294.00

Employ Green, Grant, and Richards, Inc.: 50% Guarantee Return on checks.   Estimated Loss Reduction of    **$20,000**

### Forklift Maintenance

Minor repair to be done in-house by Warehouse Supervisor Larry Ross rather than out sourcing.   Annual Expense Reduction:   **$10,000**

### Consolidation of Office Supply Purchases

All office supply purchases to be consolidated through Accounts Payable Clerk.  To be requisitioned and monitored for waste.
Estimate Annual Savings of 20%:     **$15,000**

EXHIBIT A

*Cash Shortages from Daily Sales*

    All shortages to be deducted from Store Manager's Monthly Bonus.
    Shortages Eliminated.   Annual Savings of               **$6264**

*Start-Up Expenses*

    Expense in 2003 of $43,708.  Eliminated for 2004.  No new start-up
    anticipated for 2004.              Savings of        **$43,708**

    **Total Annual Reduction of Expense   $613,236**

---

**Sales Increase**

    The four Houston area stores located directly on major freeways, and the Perry Road location will open on Sundays.  No significant increase in expenses anticipated.
    Potential Sales increase per location:   $10,500 per month
    **Annual Sales increase for five locations:**        **$630,000**

Cash Basis

## Tile Outlet, Inc.
## Balance Sheet

**Cash Basis Accounting**

|  | BU 4/07/05 PrePet As of Jun 30, 04 * | BU 4/07/05 PrePet As of Jul 31, 04 * | BU 4/07/05 PrePet As of Aug 31, 04 * |
|---|---:|---:|---:|
| **ASSETS** | | | |
| **Current Assets** | | | |
| **Checking/Savings** | | | |
| Petty Cash | 4,468 | 4,793 | 4,556 |
| 3296 Bank One CRD | 2,245 | 1,895 | 1,583 |
| Chase CRD | | | |
| 3346 Bank One Payroll | 32,055 | 1,522 | 27,961 |
| Chase Payroll | | | |
| 3585 Bank One Main | -24,528 | -45,514 | -60,505 |
| 3742 Savings | 2,148 | 2,135 | 2,122 |
| 6945 Chase Bank of Texas | 28,705 | 4,435 | 1,435 |
| Business Money Market | 30,388 | 10,388 | 10,388 |
| **Total Checking/Savings** | 75,481 | -20,346 | -12,460 |
| **Accounts Receivable** | | | |
| Gas Advance | 6,915 | 6,915 | 6,915 |
| ROA | 16,070 | 16,070 | 15,076 |
| **Total Accounts Receivable** | 22,985 | 22,985 | 21,991 |
| **Other Current Assets** | | | |
| Inventory Asset | 1,918,506 | 1,984,691 | 1,848,346 |
| Investment | 1,556 | 1,556 | 0 |
| Petty Cash | | | |
| Prepaid | | | |
| Security Deposit | 51,298 | 51,298 | 51,298 |
| Sign | | | |
| **Total Other Current Assets** | 1,971,360 | 2,037,545 | 1,899,644 |
| **Total Current Assets** | 2,069,826 | 2,040,184 | 1,909,175 |
| **Fixed Assets** | | | |
| Plant, Property and Equipment | 126,880 | 112,450 | 112,450 |
| **Total Fixed Assets** | 126,880 | 112,450 | 112,450 |
| **Other Assets** | | | |
| Advance | -22,500 | -10,000 | 6,146 |
| Employee Loan | 1,124 | 3,554 | 3,094 |
| Office Equipment | | | |
| **Total Other Assets** | -21,376 | -6,446 | 9,240 |
| **TOTAL ASSETS** | 2,175,330 | 2,146,188 | 2,030,864 |
| **LIABILITIES & EQUITY** | | | |
| **Liabilities** | | | |
| **Current Liabilities** | | | |
| **Accounts Payable** | | | |
| Accounts Payable | 1,413,193 | 1,385,717 | 1,261,344 |
| **Total Accounts Payable** | 1,413,193 | 1,385,717 | 1,261,344 |
| **Other Current Liabilities** | | | |
| 2001 Bank One Line | 240,080 | 240,080 | 231,260 |
| 4395 Ford Truck | 0 | 0 | 0 |
| 4396 Ford Truck | 666 | 666 | 666 |
| 6801 Ford Truck | | | |
| 9280 Ford Truck | 12,278 | 11,556 | 10,833 |
| 9295 Ford Truck | 1,250 | 834 | 834 |
| 9674 Ford Truck | 3,334 | 2,500 | 1,667 |
| CHASE AUTOMOTIVE FINANCE | 2,028 | 1,521 | 1,014 |
| Chase Bank | | | |
| C. G. Tinsley | | | |
| Loan Payable | | | |
| Federal Inc. Tax Payable | | | |
| Sales Tax Payable | 62,116 | 61,698 | 60,068 |
| **Total Other Current Liabilities** | 321,752 | 318,855 | 306,342 |
| **Total Current Liabilities** | 1,734,945 | 1,704,572 | 1,567,686 |
| **Total Liabilities** | 1,734,945 | 1,704,572 | 1,567,686 |
| **Equity** | | | |
| Capital | | | |
| Opening Bal Equity | -26,498 | -26,508 | -26,508 |
| Retained Earnings | 240,007 | 240,007 | 240,007 |
| Stock | 1,000 | 1,000 | 1,000 |
| Net Income | 225,876 | 227,118 | 248,679 |
| **Total Equity** | 440,385 | 441,616 | 463,178 |
| **TOTAL LIABILITIES & EQUITY** | 2,175,330 | 2,146,188 | 2,030,864 |

* Inventory was adjusted at year end 2004 to reflect freight and customs duties previously expensed instead of being booked as part of landed cost of inventory. The adjustment was estimated at 50% of actual cost for year or $467,875. Using the same methodology, inventory was increased in the above balance sheets by $208,565 for the June period, $27,456 for July & $5,775 for August periods to reflect what the adjustment would have been if done in those periods.

** There is a contingent liability to Chase/Bank One commencing on July 13, 2004 in the amount of $600,000. Shareholder Alan Miller, the primary obligor on the $600,000 liability pledged approximately $100,000 in assets to secure the liability. Tile Outlet's contingent liability would be offset by an equal amount due from Shareholder Alan Miller if exercised by Chase/Bank One.



EXHIBIT B

Page 1 of 1