IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| TILE OUTLET, INC., | ) | CASE NO. 05-80340-G3-11 |
| ALAN MILLER, | ) ) | CASE NO. 05-36681-H3-11 |
| Debtors, | ) ) | (Jointly Administered) |

MEMORANDUM OPINION

The court has held a hearing on the "Committee's Motion for Authority to Bring Causes of Action on Behalf of Estate" (Docket No. 197).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered granting the motion.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Tile Outlet, Inc. ("Tile Outlet") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 4, 2005.  Alan Miller filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 29, 2005.  The cases were jointly administered by order entered July 13, 2005.

On February 4, 2005, Tile Outlet filed a motion to use cash collateral, asserting that Bank One, N.A.[1] had outstanding loans to Tile Outlet in the amounts of $251,439.23 on a revolving line of credit, and $546,732.82 on a term loan, secured by Tile Outlet's inventory, chattel paper, accounts, equipment, and general intangibles.  (Docket No. 4).

The court held a preliminary hearing on cash collateral motion on February 8, 2005.  At that hearing, counsel for Bank One, Tile Outlet, and the United States Trustee appeared.  The parties present announced an agreement, and were directed to submit a proposed form of order within ten days.  (Docket No. 13).

On February 9, 2005, the parties submitted a proposed form of order, approving interim use of cash collateral.  (Docket No. 21).

The court denied approval of the proposed form of order, on grounds the budget attached was vague.  (Docket No. 25).

On February 17, 2005, the parties submitted an amended proposed form of order.  (Docket No. 29).  The amended proposed form of order (which was never signed) provided for Tile Outlet's use of cash collateral through February 23, 2005.

---

[1] Bank One, N.A. is now known as JP Morgan Chase.  For the purpose of clarity, "Bank One" is used throughout this opinion.

On February 23, 2005, on the oral motion of counsel for Tile Outlet, an order was entered extending Tile Outlet's authorized use of cash collateral through a final hearing on March 21, 2005.  (Docket No. 45).

Prior to the final hearing, the Official Committee of Unsecured Creditors ("Committee") filed an objection, on grounds, inter alia, the terms in the proposed form of interim order called for the payment of interest to Bank One as an oversecured claim.  The Committee asserted that "[i]f, and to the extent that, any payments are made to Chase[2], such payments should be made without prejudice to the Debtor's rights to recover such payments if it is determined that there is an issue with the extent, validity or priority of Chase's liens or claims, or that Chase was not otherwise entitled to interest payments under the Bankruptcy Code or applicable law."  (Docket No. 64).

At the hearing, counsel present (representing Tile Outlet, Bank One, the Committee, and several school districts) announced that they either would submit a proposed form of agreed order, or would request an additional hearing.

The parties submitted a proposed form of order (Docket No. 87) on April 8, 2005, and the form of order was signed on April 14, 2005.  (Docket No. 89).

---

[2]This is the same entity referred to in this opinion as "Bank One."

> The cash collateral order provides in pertinent part:
>
> P.   Nothing contained herein shall be construed as any admission by the Committee as to the extent, validity, priority or amount of the Bank's lien and the Committee expressly reserves its right to challenge same.  Any challenges by any party-in-interest, including the Creditors Committee appointed herein, to the Bank's liens and/or claims must be asserted on or before June 1, 2005, by the filing of an adversary proceeding challenging the Bank's liens and/or claims.  In the event the Committee files an adversary proceeding, it may seek the return of funds paid pursuant to the terms of this Order.  If no challenge is made on or before June 1, 2005, or such further time as the Debtor, the Bank, and the Committee shall agree to in writing, or such further time as the Court allows after a hearing, and for cause, the validity and enforceability of the Bank's liens and/or claims shall be established and not subject to challenge, attack or subordination.

(Docket No. 89, at p. 7).

On May 31, 2005, the Committee filed the complaint in Adversary No. 05-8032.  In the complaint, the Committee asserted that Tile Outlet fraudulently guaranteed a debt owed by Miller to Bank One.

Bank One moved to dismiss Adv. No. 05-8032, asserting that the Committee lacked standing, and that the complaint failed to state a claim and failed to allege fraud with particularity. (Docket No. 5, Adv. No. 05-8032).

This court granted the Bank's motion, holding that the Committee lacked standing to bring the causes of action pled in the complaint, because the Committee had not sought or obtained authority, under the standards of Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233 (5th Cir. 1988), to bring such

4

causes of action on behalf of the bankruptcy estate. (Docket No. 16, Adv. No. 05-8032). The judgment, entered October 19, 2005, granted dismissal "without prejudice to the filing by the Plaintiff, in the above captioned Chapter 11 case, with notice to all creditors and parties in interest, of a motion seeking authority to bring causes of action on behalf of the bankruptcy estate." (Docket No. 15, Adv. No. 05-8032).

In the instant motion, which was filed December 9, 2005, the Committee seeks authority to bring the causes of action pled in Adv. No. 05-8032, on behalf of the bankruptcy estate, against Miller, David Tinsley, and Bank One. The Committee asserts that Miller, who was then owner of 50 percent of Tile Outlet's shares, borrowed funds from Bank One, guaranteed by Tile Outlet, and secured by all of Tile Outlet's assets, in order to purchase the interest of Tinsley, who was then owner of the other 50 percent of Tile Outlet's shares. The Committee asserts that Tile Outlet received no value for the guarantee, that the guarantee rendered Tile Outlet insolvent, and that the guarantee left Tile Outlet unreasonably undercapitalized. (Docket No. 197).[3]

---

[3] Some of the Committee's assertions are grounded in a balance sheet provided to the Committee by counsel for Tile Outlet. (Committee Exhibit 8). However, the exhibit was admitted into evidence with a cover e-mail indicating that the balance sheet represented therein was not contemporaneously kept as a business record of Tile Outlet, but rather was "the Debtor's current attempt to recreate its July and August Balance Sheet."

On November 2, 2005, after dismissal of Adversary No. 05-8032, the Committee sent a demand letter to Tile Outlet, demanding that Tile Outlet sue Bank One, Miller, and Tinsley.

Miller testified that he investigated the causes of action asserted by the Committee, and declined to pursue them. He testified that he believed Tile Outlet received a benefit from Miller's purchase of Tinsley's stock, and Tile Outlet's guarantee of the debt Miller incurred to do so. He testified that he did not believe the benefit of the proposed litigation was worth the cost.

Miller testified that, prior to July 13, 2004, Tile Outlet was owned half by Miller, and half by Tinsley. He testified that, on July 13, 2004, he purchased Tinsley's shares. He testified that he valued Tile Outlet at $3 million as a going concern. He testified that the assets, at the time of the purchase, included approximately $1.9 million in inventory, and approximately $300,000 in vehicles, warehouse racks, and forklifts. He testified that the purchase price for half the business was $1.5 million. He testified that he paid Tinsley $150,000 in cash, $100,000 in marketable securities, and borrowed the remainder of the funds to provide the purchase price of the shares.

Miller testified that, at the time of the purchase transaction, Tile Outlet was generally paying its debts as they

became due.  He testified that the transaction did not leave Tile Outlet with unreasonably small capital.  He testified that, subsequent to the closing of the transaction, softness in demand for Tile Outlet's products and increased pressure from competitors led to Tile Outlet's Chapter 11 filing.

Miller testified that the benefits Tile Outlet anticipated receiving from Miller's purchase of Tinsley's shares included the elimination of Tile Outlet's expenses to pay a salary and benefits to Tinsley.  He testified that Tinsley's salary was $240,000, and that the total cost to Tile Outlet of Tinsley's compensation package was approximately $305,000. Miller acknowledges that, with the downturn in the business subsequent to his purchase of Tinsley's shares, the salary paid to Tinsley would have been less.  However, he testified that he did not anticipate a downturn, and anticipated that, in the absence of his purchase of Tinsley's interest, the expenses of $305,000 per year would have continued.

## Conclusions of Law

In <u>Louisiana World Exposition v. Federal Ins. Co.</u>, 858 F.2d 233 (5th Cir. 1988), the Fifth Circuit held that a Committee may pursue a cause of action owned by the bankruptcy estate if a colorable claim exists, the debtor in possession unjustifiably refuses to pursue the claim, and the Committee seeks and obtains leave from the bankruptcy court to pursue the claim.

The court has previously held that the causes of action which the Committee seeks to assert are property of the bankruptcy estate.

In Louisiana World, the Fifth Circuit noted that "if pursuing the action would maximize the value of the estate, the debtor-in-possession is obligated to do so.  Where the debtor-in-possession is unable or unwilling to fulfill its obligation--due, for instance, to a conflict of interest--the Committee may assert the cause of action on behalf" of the estate.  The court also noted that, in determining whether a debtor-in-possession's refusal was unjustified, the court must look to whether the interests of creditors were left unprotected as a result.

In the instant case, the claims the Committee seeks to assert are colorable claims based on Section 548 of the Bankruptcy Code.  The arguments raised by Miller's testimony go to the merits of the underlying question of whether the transaction was in fact subject to avoidance and/or recovery, rather than the question of whether Tile Outlet's refusal to pursue the transaction was unjustifiable.  There is a clear conflict of interest in the instant case, in that Miller, individually, is anticipated to be a defendant in the proposed litigation, and that Miller, in his capacity as president and sole shareholder of Tile Outlet, would likely suffer the

consequences of expenditure of Tile Outlet funds to pursue the proposed litigation. The court concludes that Tile Outlet's refusal to pursue the claims is unjustifiable. The court concludes that the Committee should be granted authority to bring the proposed causes of action on behalf of the bankruptcy estate.

Bank One asserts that the claims are barred by the the passage of the June 1, 2005 deadline, contained in the cash collateral order, based on this court's dismissal of Adversary No. 05-8032. The court rejects this argument. The Committee timely asserted the causes of action it now seeks to pursue, in Adversary No. 05-8032, and it was prevented from pursuing those causes of action only because it had not yet sought or obtained this court's authority to do so. The court previously dismissed those causes of action, without prejudice to the Committee's seeking and obtaining the relief sought in the instant motion. Now that the Committee has made demand upon the Debtor to bring the causes of action, the Debtor has unjustifiably refused to do so, and the court having determined that the relief sought should be granted, the court will permit the revival of those causes of action, in Adversary No. 05-8032, without the need for filing of a new adversary proceeding.

Based on the foregoing, a separate Judgment will be entered granting the "Committee's Motion for Authority to Bring Causes of Action on Behalf of Estate" (Docket No. 197). In addition, a separate Judgment will be entered, in Adv. No. 05-

8032, reopening the adversary proceeding and setting a status hearing.

      Signed at Houston, Texas on March 27, 2006.

                                          LETITIA Z. CLARK
                                          UNITED STATES BANKRUPTCY JUDGE